IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) | Civil Action No. |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| | ) | |
| VASANT H. RAVAL | ) | |
| Defendant. | ) | |

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

## I.     SUMMARY

1.      From 2003 through 2007, Vinod Gupta, the former CEO and chairman of the board of infoUSA Inc. (now InfoGroup Inc.) ("Info"), directed Info to pay him approximately $9.5 million of unauthorized and undisclosed perquisites, which included the personal use of corporate jets; costs associated with a yacht, homes, automobiles, and life insurance policies; personal credit card expenses; and club memberships and related costs.  For the same period, Info entered into related party transactions totaling approximately $9.3 million with two entities which Gupta controlled, and one entity with which he was affiliated, without disclosing the transactions in Info's public filings with the Commission.

2.      Between January 2005 and July 2006, Defendant Vasant H. Raval, then a member of Info's board of directors and the chairman of its audit committee, became aware of red flags concerning certain payments made by Info to Gupta for personal expenses, and concerning certain related party transactions with Gupta's entities.  Raval, however, did not take appropriate action and, although he knew, or was reckless in not knowing, that the red flags had not been addressed, he reviewed and signed Info's 2004 through 2006 Forms 10-K and solicited, or

permitted the use of his name to solicit, proxies from shareholders in connection with the company's 2004 through 2006 proxy statements.

3.      As a result of this conduct, Raval, directly and indirectly, has engaged in, and unless restrained and enjoined by this Court, will in the future engage in, transactions, acts, practices, and courses of business that violate Exchange Act Sections 10(b) and 14(a), [15 U.S.C. §§ 78j(b) and §78n(a)] and Rules 10b-5, 14a-3 and 14a-9 thereunder [17 C.F.R. §§ 240.10b-5, 240.14a-3, and 240.14a-9] and that aid and abet violations of Exchange Act Sections 13(a) and 13(b)(2)  [15 U.S.C. §§ 78m(a) and 78m(b)(2)] and Rules 12b-20 and 13a-1 thereunder [17 C.F.R. §§ 240.12b-20 and 240.13a-1].

4.      The Commission brings this action pursuant to the authority conferred upon it by Sections 21(d) and (e) of the Exchange Act [15 U.S.C. §§ 78u(d) and (e)] for an order permanently restraining and enjoining Raval; prohibiting Raval from acting for a period of five years following the date of the entry of the final judgment as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]; imposing a civil money penalty.

## II.      DEFENDANT AND RELATED ENTITIES

5.      **Vasant H. Raval**, 70, is a resident of Omaha, Nebraska.  Raval served on Info's board of directors from October 2002 to December 2008.  He joined Info's audit committee in October 2002, and served as its chair between January 2003 and July 2008.  He also served as Info's audit committee financial expert in fiscal years 2003 through 2006.

6.      **infoUSA Inc.** (now infoGROUP Inc.) is a Delaware corporation headquartered in Omaha, Nebraska that compiles and sells business and consumer databases for sales leads,

mailing lists, and direct and email marketing.  At all relevant times, Info has had a class of

securities registered with the Commission under Exchange Act Section 12.  Info's common stock

trades on NasdaqGS under the symbol "IUSA."

       7.     **Annapurna Corporation** (now Everest Corporation), a Nevada company formed

in 1987, is controlled by Gupta.  Gupta established Annapurna to own and/or manage certain of

his personal assets and assets of his other entities, including his investments, interests in aircraft,

an 80-foot yacht, and numerous homes.  During the relevant period Annapurna was located in

Info's Omaha office building.

       8.     **Aspen Leasing Services, LLC** ("Aspen Leasing")**,** a Nevada limited liability

company formed in 2002, is controlled by Gupta.  Aspen Leasing owns and leases vehicles.

During the relevant period Aspen Leasing was located in Info's Omaha office building.

### III.      JURISDICTION AND VENUE

       9.     This Court has jurisdiction over this action pursuant to Sections 21(e) and 27 of

the Exchange Act, 15 U.S.C. §§ 78u(e) and 78aa.  Venue lies in this Court pursuant to Section 27

of the Exchange Act, 15 U.S.C. § 78aa.

       10.    In connection with the transactions, acts, practices, and courses of business

described in this Complaint, Defendant, directly or indirectly, has made use of the means or

instrumentalities of interstate commerce or of the mails.

       11.    Certain of the transactions, acts, practices and courses of business constituting the

violations of law alleged herein occurred within this district.

### IV.      FACTS

       12.    From at least 2003 through 2007, Gupta directed Info to pay him approximately

$9.5 million of unauthorized and undisclosed perquisites.  The cost of these perquisites was

billed to Info either directly or through Annapurna and Aspen Leasing. The perquisites were paid to Gupta in the form of reimbursed business expenses, and included, among others, the personal use of jets; costs associated with a yacht; cars; personal credit card expenses; personal life insurance policies; homes; and club memberships.

13.     For the same period, Info entered into related party transactions totaling approximately $9.3 million with two entities which Gupta controlled, and one entity with which he was affiliated, without disclosing the transactions in Info's public filings with the Commission. Approximately $2.5 million of these undisclosed related party transaction payments are reflected in the $9.5 million paid to Gupta for unauthorized and undisclosed perquisites as alleged in the paragraph above. Prior to December 2004, Info did not have a related party transactions policy. Gupta exploited weaknesses in or the lack of internal controls for related party transactions by unilaterally determining what transactions Info would enter into with Annapurna, Aspen Leasing, or other entities related to him. After 2004, Gupta failed to follow Info's related party transactions policy.

14.     In January 2005, as part of approving a new related party transaction policy in order to comply with certain requirements pursuant to the Sarbanes-Oxley Act of 2002, Info's audit committee reviewed a detailed list of related party transactions for fiscal years 2003 and 2004 (the "RPT List"). Among other things, the RPT List identified over $1.5 million in payments to Annapurna, including recurring monthly payments for the yacht and payments related to several of Gupta's homes, as well as extensive jet travel between cities in which Gupta owned homes. The RPT List also identified certain related party payments from Info to Aspen Leasing.

15.     On January 24, 2005, the RPT List was brought to the attention of Info's full board of directors.  Because the RPT list, among other things, raised serious questions concerning whether certain of Gupta's expenses were personal in nature, and whether the related party transactions with Gupta's entities were necessary and/or appropriate, the board determined that an investigation of the expenses was necessary.  At a January 27, 2005 board meeting, the board tasked Raval, in his role as chair of the audit committee, to conduct the investigation and report back before the company filed its 2004 Form 10-K and proxy statement in March 2005.

16.     Raval's investigation revealed to him insufficient documentation and explanations concerning the reimbursement of certain of Gupta's expenses, including jet travel, yacht, and house expenses, and internal control problems with respect to the reimbursement of Gupta's expenses and related party transactions with Gupta's entities.

17.     Despite his mandate from the board to investigate, his position as audit committee chair, and the upcoming filing deadline for Info's annual report, Raval failed to take meaningful action to further investigate Gupta's expenses.

18.     Separately, Raval received an unsolicited document from Info's director of internal audit (who reported directly to Raval in his role as chair of the audit committee), that questioned the business purpose of certain expense reimbursement payments made by Info to Gupta for flights, credit card expenses, the yacht, cars, homes, and club memberships, and of certain related party transactions between Info and Gupta's entities (the "Internal Audit List"). The Internal Audit List also identified that Gupta's entities occupied space in Info's office building rent free.  Raval was the only recipient of the Internal Audit List.  He assured the director of internal audit that he would address her concerns with Gupta, but he did not.

19.     Raval prepared a report of his findings dated February 8, 2005.  On February 9, 2005, Raval presented his report to Info's board and outside disclosure counsel that Raval described was the result of an "in-depth investigation" (the "Raval Report").  The Raval Report, however, omitted critical facts.  For example, Raval did not inform the board or disclosure counsel that Raval was aware of insufficient documentation for certain payments to Gupta or that he had not, in fact, adequately investigated Gupta's expenses.

20.     In June and July 2005, Info's new director of internal audit, who reported to Raval, expressed concerns to Raval that certain of Gupta's requests for reimbursement of expenses appeared actually to be for personal expenses.  The new director of internal audit told Raval that Info's recent proxy statement (filed in March 2005) should have disclosed Gupta's personal use of company aircraft and other personal benefits as compensation to Gupta.  The new director of internal audit also provided to Raval spreadsheets and examples of questionable country club, yacht, house, car, and personal life insurance expenses.  Raval, however, did not discuss the new director of internal audit's concerns with the board, disclosure counsel, Info's outside auditor, or take other appropriate action.

21.     In July 2006, Info's disclosure counsel sent a memo to Raval, in response to concerns expressed by an Info shareholder, which communicated to Raval that various invoices during the 2004 and 2005 time period appeared to lack adequate documentation of business purpose and indicated potential personal use of the corporate aircraft by Gupta.  Raval had seen some of these same invoices during his investigation in February 2005.  Raval, however, did not take appropriate action.

22.     Further, in its Forms 10-K and proxy statements, Info historically had disclosed that it paid certain amounts to Annapurna for the "use of the aircraft and other travel expenses,"

or the "use of the aircraft and related services," or simply the "use of the aircraft."  Raval knew, or was reckless in not knowing, that these disclosures were false and misleading because:  (i) Info's payments to Gupta's entities included payments for items other than simply use of the aircraft; and (ii) significant amounts involving transactions with Gupta's entities were not disclosed.  Specifically, Info paid Gupta's entities to lease not only his aircraft, but also paid costs for Gupta's homes, yacht, and automobiles, and provided office space to Gupta's entities in Info's building rent free.

23.     Info materially understated the amount of related party transactions with Annapurna by failing to include certain payments it made on Annapurna's behalf to a jet leasing company.  Raval saw invoices that Gupta submitted to Info, and that directed Info to pay part of the invoice to Annapurna and the remaining amount directly to the jet leasing company.  The split of the payment between Annapurna and the jet leasing company fraudulently reduced the amount of related party payments that Info disclosed in its Commission filings.  Raval, however, failed to detect this issue, and therefore took no action.

24.     Further, in the fourth quarter of 2003 Gupta directed Info to purchase a jet interest owned by Annapurna for approximately $1.1 million.  Info failed to disclose the purchase in its 2003 Form 10-K and proxy statement.  Raval knew, or was reckless in not knowing, about this purchase before Info filed in March 2005 its 2004 Form 10-K and proxy statement, yet Raval failed to ensure the accurate disclosure of the purchase.

25.     Raval had a duty to take steps to ensure the accuracy and completeness of the statements contained in the company's Commission filings.  Raval, however, failed to take appropriate action with respect to significant red flags concerning Gupta's expenses and Info's related party transactions with Gupta's entities.

26.     Raval knew, or was reckless in not knowing, that he signed Info's 2004 through 2006 Forms 10-K, and solicited proxy statements, without taking appropriate steps to ensure that these filings did not contain materially false or misleading statements or omissions.

27.     The fraud committed by Gupta and others could have been uncovered sooner had Raval further investigated the red flags himself; or hired outside counsel or others to do so; or brought facts to Info's board, auditor, or disclosure counsel to determine an appropriate course of action.  A full investigation later revealed that:  (A) Info's 2003 through 2007 Forms 10-K, which incorporated by reference the company's proxy statements, materially understated Gupta's compensation by excluding the nearly $9.5 million in perquisites he received; and (B) the amounts Info paid to, or on behalf of, entities related to Gupta during 2003 through 2007 were materially understated in Info's Forms 10-K and proxy statements by nearly $9.3 million.

### FIRST CLAIM FOR RELIEF
(Section 10(b) of the Exchange Act and Rule 10b-5)
15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5

28.     Paragraphs 1 through 27 are hereby realleged and incorporated by reference.

29.     Defendant directly and indirectly, in connection with the purchase or sale of securities, by use of the means or instrumentalities of interstate commerce or by use of the mails, has employed devices, schemes, or artifices to defraud; has made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or has engaged in acts, practices, or courses of business which have been and are operating as a fraud or deceit upon the purchasers or sellers of such securities.

30.     By reason of the foregoing, Defendant violated and unless restrained and enjoined will violate Section 10(b) of the Exchange Act and Rule 10b-5.

## SECOND CLAIM FOR RELIEF
(Section 14(a) of the Exchange Act and Rules 14a-3 and 14a-9)
15 U.S.C. §78n(a) and17 C.F.R. §§ 240.14a-3 and 14a-9

31.     Paragraphs 1 through 27 are hereby realleged and incorporated by reference.

32.     Defendant, by use of the mails or by the means or instrumentalities of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission has prescribed, solicited or permitted the use of his name to solicit a proxies with respect to Info securities, which are registered pursuant to Section 12 of the Exchange Act.

33.     Defendant, directly and indirectly, solicited proxy statements containing statements which, at the time and in light of the circumstances under which they are made, were false or misleading with respect to any material fact, or omitted to state material facts necessary in order to make the statement therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which had become false or misleading.

34.     By reason of the foregoing, Defendant violated and unless restrained and enjoined will violate Section 14(a) of the Exchange Act and Rules 14a-3 and 14a-9.

## THIRD CLAIM FOR RELIEF
(Sections 13(a) and 13(b)(2) of the Exchange Act and Rules 12b-20 and 13a-1)
15 U.S.C. §§ 78m(a), and 78m(b)(2) and 17 C.F.R. §§ 240.12b-20 and 240.13a-1

35.     Paragraphs 1 through 27 are hereby realleged and incorporated by reference.

36.     Info violated Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act and Rules 12b-20 and 13a-1 (15 U.S.C. §§ 78m(a), and 78m(b)(2)(A) and (B) and 17 C.F.R. §§ 240.12b-20 and 240.13a-1).

37.     By engaging in the conduct described above, Defendant aided and abetted Info's violations pursuant to Section 20(e) of the Exchange Act [15 U.S.C. §78t(e)].

38.     By reason of the foregoing, unless restrained and enjoined, Defendant will in the future violate Exchange Act Sections 13(a), 13(b)(2)(A), 13(b)(2)(B), and Rules 12b-20, 13a-1, and 13a-13.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

### I.

Find that the Defendant committed the violations alleged.

### II.

Enter an Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining defendant, his agents, servants, employees, and attorneys-in-fact, and all persons in active concert or participation with them, from violating, directly or indirectly, the provisions of law and rules alleged in this complaint.

### III.

Order Defendant to pay a civil penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] in an amount to be determined by the Court, plus post-judgment interest.

IV.

Order that Defendant be prohibited for a period of five years from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

V.

Grant such other relief as this Court may deem just or appropriate.

Dated:  March 15, 2010

Respectfully submitted,

<u>s/ Thomas J. Krysa</u>
Thomas J. Krysa
Ian S. Karpel
Patricia E. Foley
Attorneys for Plaintiff
Securities and Exchange Commission
1801 California Street, Suite 1500
Denver, Colorado 80202
Telephone: (303) 844-1000
Facsimile: (303) 844-1010